# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. BARKER, ) | CV F 03 6100 AWI LJO HC |
| ) | |
| Petitioner, ) | FINDINGS AND RECOMMENDATION |
| ) | REGARDING PETITION FOR WRIT OF |
| v. ) | HABEAS CORPUS |
| ) | |
| GAIL LEWIS, Warden, ) | [Doc. #1] |
| ) | |
| Respondent. ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action has been referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302. Due to the death of Magistrate Judge Hollis G. Best and the appointment of Magistrate Judge William M. Wunderlich, this matter was reassigned to the undersigned for all further proceedings.

### BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Contra Costa, following his conviction by

---

[1] This information is derived from the petition for writ of habeas corpus, Respondent's answer to the petition, and Petitioner's traverse to Respondent's answer.

1 jury trial on June 27, 1975, of murder in the first degree in violation of Cal. Penal Code § 187 and
2 involuntary manslaughter in violation of Cal. Penal Code § 192. See Exhibit A, Respondent's
3 Answer to Petition (hereinafter "Answer").  Petitioner was sentenced to serve an indeterminate
4 prison term of seven years to life. See Petition at 3.

5      On May 31, 2001, a parole suitability hearing was held by the California Board of Prison
6 Terms ("BPT"). See Exhibit B, Answer. Petitioner refused to attend the hearing. He was, however,
7 represented by an attorney at the hearing. At the conclusion of the hearing, the BPT denied parole
8 and deferred rehearing for three years.

9      On July 28, 2003, Petitioner filed the instant petition for writ of habeas corpus in the United
10 States District Court for the Northern District of California.  By order of the court dated August 5,
11 2003, the action was transferred to the Fresno Division of the Eastern District of California and
12 received in this Court. The petition for writ of habeas corpus does not challenge the underlying
13 conviction; rather, it challenges the May 31, 2001, decision of the California Board of Prison Terms
14 to deny parole.

15      On January 22, 2004, Respondent filed an answer to the petition for writ of habeas corpus.
16      On March 16, 2004, Petitioner filed a traverse to Respondent's answer.
17      On July 27, 2005, Respondent, with leave of court, filed a supplemental answer to the
18 petition.
19      On October 17, 2005, Petitioner filed a supplemental traverse.

20 **DISCUSSION**

21 I.  Standard of Review

22      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of
23 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.
24 Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114
25 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert.*
26 *denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997)
27 (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was
28 filed after the enactment of the AEDPA; thus, it is governed by its provisions.

1    Petitioner is in custody of the California Department of Corrections pursuant to a state court
2 judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C.
3 § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold
4 requirement of being in custody pursuant to a state court judgment. White v. Lambert, 370 F.3d
5 1002, 1006 (9th Cir.2004); Sass v. California Board of Prison Terms, 2005 WL 1406100, *2 (E.D.
6 Cal.2005); see 28 U.S.C. § 2254(a) (This Court may entertain a petition for writ of habeas corpus "in
7 behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is
8 in custody in violation of the Constitution or laws or treaties of the United States.").

9    The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death
10 Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70
11 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the
12 adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable
13 application of, clearly established Federal law, as determined by the Supreme Court of the United
14 States" or "resulted in a decision that was based on an unreasonable determination of the facts in
15 light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,
16 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

17    As a threshold matter, this Court must "first decide what constitutes 'clearly established
18 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
19 *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court
20 must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time
21 of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly
22 established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by
23 the Supreme Court at the time the state court renders its decision." Id.

24    Finally, this Court must consider whether the state court's decision was "contrary to, or
25 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,
26 *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the
27 writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a
28 question of law or if the state court decides a case differently than [the] Court has on a set of

materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.  Failure to State a Cognizable Federal Claim

Petitioner contends that his federal constitutional rights were violated, and he was deprived of liberty without due process of law, when the BPT failed to set a parole release date at his parole hearing on May 31, 2001. Petitioner contends that the language of the California parole statutes creates a presumptive entitlement to, and thus has a liberty interest in, the setting of a parole release date. Because Petitioner is challenging the actions of a state, the Court will proceed under the Fourteenth Amendment.

The Fourteenth Amendment provides that "[no] State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. In certain cases, a

state law may create a liberty interest protected by the Constitution. In examining questions of procedural due process, federal courts employ a two-step inquiry: 1) whether there exists a liberty or property interest which has been interfered with by the State, Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and 2) whether the procedures attendant upon that deprivation were constitutionally sufficient, Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), *receded from and rejected on separate grounds*, Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). See Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).

Thus, the first question that must be answered is whether there exists a liberty interest protected by the Due Process Clause. The United States Supreme Court has expressly denied entitlement to a protected liberty interest in parole. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). "Nevertheless, early release statutes can create a 'liberty interest protected by due process guarantees.'" Bermudez v. Duenas, 936 F.2d 1064, 1067 (9th Cir.1991) (per curiam), *quoting* Greenholtz, 442 U.S. at 12; Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). Moreover, "[a] state may create a constitutionally protected liberty interest by establishing regulatory measures that impose substantive limitations on the exercise of official discretion." Bermudez, 936 F.2d at 1067, citing Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 844 (9th Cir.1985). However, no protected entitlement to release exists unless a state scheme includes a formula which mandates release after the occurrence of specified events. Baumann, 754 F.2d at 844 (stating that the unique "shall/unless" formula was decisive in Greenholtz). If there exists mandatory language in a parole statute, then Petitioner has a protected liberty interest in parole release. Greenholtz, 442 U.S. at 11-12. If, however, the state merely holds out the possibility of parole, then such a hope is not protected by due process. Id.; Baumann, 754 F.2d at 844. Therefore, the Court must look to the California parole statutes to determine whether the unique structure and language of those statutes creates an entitlement to parole release or a presumption of expectation of parole release.

The relevant California statutory language is contained in Cal. Penal Code § 3041, which

states, in relevant part:

> (a) One year prior to the inmate's minimum eligible parole release date a panel of two or more commissioners or deputy commissioners shall again meet with the inmate and *shall normally set a parole release date* as provided in Section 3041.5.
>
> (b) The panel or the board, sitting en banc, *shall set a release date unless it determines* that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting . . . .

Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added).

The language in Cal. Penal Code § 3041 provides for the possibility of parole. A release date *shall* be set *unless* the BPT determines that the prisoner should not be released. The word "shall" is not used in an absolute or mandatory sense. Sass, 2005 WL 1406100, *6. It is qualified or modified in both subsections. Thus, parole is not automatic; it is discretionary. Nevertheless, the Ninth Circuit Court of Appeals, without the assistance of a definitive California Supreme Court interpretation, found the language in § 3041 to be mandatory. See McQuillion v. Duncan, 306 F.3d 895 (9th Cir.2002).

In 2005, in In re Dannenberg, 34 Cal.4th 1061, 1087 (2005), the California Supreme Court provided a definitive interpretation of § 3041's structure and language. In Dannenberg, the California Supreme Court held: 1) the language in § 3041 is not mandatory; 2) there is no right to parole in California; 3) the Board of Prison Terms has extremely broad discretion and is not required to fix a parole date; and 4) the statutory scheme of § 3041 indicates that § 3041(b) extinguishes any expectancy an inmate may have in parole found in § 3041(a). Dannenberg, 34 Cal.4th at 1084, 1087-88, 1097-98; Sass, 2005 WL 1406100, *6.

This Court is therefore faced with conflicting interpretations from the Ninth Circuit and the California Supreme Court. Normally, the Court would defer to the Ninth Circuit's interpretation of the state statute; however, circuit opinions are only persuasive authority. Clark, 331 F.3d at 1069; Duhaime, 200 F.3d at 600-01. On the other hand, "[w]hen a state court has made its own definitive determination as to the meaning of a state statute, federal courts give this finding great weight in determining the natural effect of a statute, and if it is consistent with the statute's reasonable interpretation, it will be deemed conclusive." Sass, 2005 WL 1406100, *6, *citing* Gurley v. Rhoden,

421 U.S. 200, 208, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975); see also Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989) (Federal courts are bound by state court rulings on questions of state law). As noted by this Court in Sass, the general principle of deference to state court interpretations is compelled by the Supreme Court's clearly established habeas corpus jurisprudence. See, e.g., Greenholtz, 422 U.S. at 12, *citing* Bishop v. Wood, 426 U.S. 341, 345, 346 n.10, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (demonstrating deference to, and the need for, holdings and interpretations of state supreme courts when establishing interests protected by due process); Allen, 482 U.S. 369, 377 n.8, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987) (implying that a Montana Supreme Court decision would have been instructive if there had been one on point).

Therefore, this Court will defer to the California Supreme Court's interpretation of § 3041 in Dannenberg. The California Supreme Court answers the first question: the language of § 3041 is not mandatory. Dannenberg, 34 Cal.4th at 1087-88. The absolute sense of the word "shall" is eviscerated by the modifications ("shall *normally* set") and qualifications ("shall . . . *unless it determines*") contained in the subsection. Cal. Penal Code §§ 3041(a), 3041(b) (West 2000) (Emphasis added). Furthermore, "the lack of mandatory language in § 3041, especially when considered in light of 1) California's long standing jurisprudence denying the existence of a parole right, 2) the statutory scheme of § 3041, and 3) the broad discretion given to the BPT under the "noncapital murderers" exception to California's determinant sentencing law, precludes a legitimate expectation of parole release and, thus, does not give rise to an associated liberty interest under clearly established federal law." Sass, 2005 WL 1406100, *7, *citing* Dannenberg, 34 Cal.4th at 1084, 1087-88, 1097-98. Therefore, as this Court held in Sass, "the unique structure and language of § 3041 precludes the finding of a federal liberty interest in parole." Sass, 2005 WL 1406100, *7. Consequently, the state court determination that Petitioner's federal due process rights were not violated at his May 31, 2001, parole hearing was not contrary to or an unreasonable of clearly established federal law. 28 U.S.C. § 2254(d). In addition, because California's parole statutes do not give rise to a protected liberty interest, Petitioner does not present a cognizable federal claim.

III.  Review in light of Supreme Court's Analysis in Sandin v. Conner

Although Petitioner does not claim a violation of his constitutional rights as determined in

Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), this Court is aware that Sandin presents another analysis for assessing whether prisoners have a protected liberty interest. In Sandin, the Supreme Court held that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." 515 U.S. at 483-84. To determine whether there is a state-created liberty interest, the Court must inquire whether the state action "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. As noted by this Court in Sass, however, Sandin "is by no means clearly established in the context of parole rights." Sass, 2005 WL 1406100, *5. In Sandin, the Supreme Court determined whether a prisoner's rights were violated in the context of his conditions of confinement, not the possibility of his release from that confinement. Sandin, 515 U.S. at 480-81. In addition, Sandin did not overrule Greenholtz or Allen. Id. at 483 n.5. Accordingly, Greenholtz and Allen remain controlling law in the context of determining whether Petitioner has a liberty interest in parole. Indeed, the Supreme Court has cited Greenholtz and Allen approvingly following Sandin as examples of cases where state statutes have created liberty interests through the use of mandatory language. See I.N.S. v. St. Cyr, 533 U.S. 289, 345-46, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

In any case, Petitioner does not have a protected liberty interest even if Sandin were applied. As correctly noted by Respondent, every California prisoner serving an indeterminate prison term is subject to the statutory maximum term unless the BPT fixes a shorter term. See Dannenberg, 34 Cal.4th at 1097-98. Therefore, the BPT's denial of parole cannot possibly impose an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Consequently, California's parole statutes do not give rise to a protected liberty interest under the Supreme Court's test in Sandin.

Notwithstanding the Court's determination that Petitioner does not have a protected liberty interest in parole in California, the Court will address Petitioner's claims.

IV.  Review of Claim

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro, 825 F.2d at 1398-99; see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand).

"[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." <u>Pedro</u>, 825 F.2d at 1399; <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, <u>Pedro</u>, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," <u>Greenholtz</u>, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," <u>Id</u>.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability, <u>Superintendent, Mass. Correc. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985); <u>Cato v. Rushen</u>, 824 F.2d 703, 705 (9th Cir.1987).

   Here, assuming that Petitioner has a protected liberty interest in the parole board's determination of his minimum term and release date, Petitioner was afforded all of his due process protections. He and his attorney were given advance written notice of his hearing. He had an opportunity to be heard at the challenged May 31, 2001, parole hearing; however, he chose not to attend the hearing. His attorney was present at the hearing. Relevant factors were discussed and taken into account, such as the circumstances of the offense, Petitioner's past criminal history, past and present mental state, education and vocational training while incarcerated, drug addictions, physical disabilities, behavior while incarcerated, and post-release plans. <u>See</u> Exhibit B, Answer; 15 C.C.R. § 2281. Upon conclusion of the hearing, it was the judgment of the panel that Petitioner would pose an unreasonable risk of danger to society if released from prison. In addition, the parole board notified Petitioner of the reasons for the denial of a parole release date. <u>See</u> <u>Greenholtz</u>, 442 U.S. at 16. As previously stated, Petitioner was represented by an attorney at the hearing, and he offered mitigating factors for the Board's consideration. <u>See</u> <u>Pedro</u>, 825 F.2d at 1399; <u>Jancsek</u>, 833 F.2d at 1390; 15 C.C.R. § 2281.

   Moreover, the decision was supported by "some evidence." The parole board panel first noted that the offense was carried out in a heinous, atrocious or cruel manner pursuant to 15 C.C.R. § 2281(c)(1). In support of this finding, the panel noted that two victims were killed, the offense was carried out in an unfeeling manner, the victims were reviled during the offense, and the offense was

carried out in a manner without feeling for human suffering. 15 C.C.R. § 2281(c)(1)(A-D). These findings find ample support in the facts of the case, as set forth by the panel:

> [T]he inmate, at a Hell's Angels meeting, indoor party, instructed and caused the death of two individuals. One, who was given at least ten caps of LSD in his coffee, went into convulsions and died. The second, which was a friend of the first victim, which was directed by [Petitioner], who was obviously a shot-caller of this killing, was choked to death. Both individuals were then removed to a remote site and placed into a well, a deep well, where they had debris, including lime, placed on their bodies, and they were not discovered for a number of months after the killings.

See pp. 44-45, Exhibit B, Answer.

Next, the panel found that Petitioner had programmed in a limited manner while incarcerated, had failed to adequately upgrade himself vocationally, and had not sufficiently participated in beneficial self-help and therapy programming. 15 C.C.R. § 2281(d)(9). This conclusion is supported by the fact that Petitioner's last vocational training took place ten years before.

The panel next noted that Petitioner had a record of misconduct while incarcerated, including fourteen CDC-128 Rule Violation Reports, four of which occurred after the most recent parole hearing. 15 C.C.R. § 2281(c)(6). In addition, Petitioner had refused to cooperate with clinicians in attempting to complete a psychiatric or psychological report. 15 C.C.R. § 2281(c)(5)-(6). Last, the panel noted that Petitioner's post-release plans were lacking. 15 C.C.R. § 2281(d)(8).

In sum, Petitioner was given adequate due process. The Constitution does not require more. Greenholtz, 442 U.S. at 16. Consequently, Petitioner's claim that the parole board's decision was not supported by some evidence fails.

Petitioner also claims the panel failed to consider his positive programming while incarcerated. As discussed above, all relevant factors, positive and negative, were taken into consideration. Nevertheless, the negative factors weighing against parole were substantial, and the parole board was presented with hardly any evidence in support of parole suitability. As noted by Respondent, Petitioner refused to even attend the hearing to present his positive factors. He also refused to cooperate with psychologists and counselors in preparation of psychological reports which could have assisted him. No post-release plans were submitted as Petitioner had failed to provide any information. Finally, Petitioner had not programmed successfully while in prison. The last time Petitioner upgraded vocationally was ten years prior to the hearing. Thus, Petitioner's claim that the

parole board did not consider all positive factors must be rejected.

Petitioner claims he has a right to a prompt determination of his primary term and claims the parole board should have "fixed" a parole date at his parole suitability hearing. This claim is without merit because Petitioner was not determinately sentenced. He was sentenced to an indeterminate term of seven years to life. See Exhibit A, Answer. In California, a life prisoner's primary term is not "fixed" until such time that he is found suitable for parole. In re Dannenberg, 34 Cal.4th 1061 (2005). As noted by Respondent, the maximum term for a life sentence is the natural life of the prisoner, and there is no requirement in California that a term ever be fixed at less than the maximum. In re Lynch, 8 Cal.3d 410, 415-16 (1972); Dannenberg, 34 Cal.4th at 1097, citing People v. Wingo, 14 Cal.3d 169 (1975) ("[T]raditionally, '[o]ne who is legally convicted has no vested right to the determination of his sentence at less than maximum'"); Dannenberg, 34 Cal.4th at 1083 ("The decision about when, if ever, each [indeterminately sentenced] inmate's prison confinement will actually end, and the period of parole, if any, will actually begin, remains in the hands of the correctional authority. . . ."). Thus, Petitioner's claim that his parole date should be fixed must be rejected.

For the same reasons, Petitioner is not entitled to a finding of suitability merely because a co-defendant has been found suitable. As discussed above, a suitability determination is highly individualized and takes into account the relevant factors in Petitioner's own case. Under California law, the factors supporting a co-defendant's parole determination have no application in a defendant's parole hearing, and the Constitution does not require such. See Dannenberg, 34 Cal.4th at 1084 (instructing that "the determination of suitability for parole involves a paramount assessment of the public safety risk posed by the particular offender, without regard to a comparative analysis of similar offenses committed by other persons").

**RECOMMENDATION**

Accordingly, the Court hereby RECOMMENDS that the petition for writ of habeas corpus be DISMISSED for failure to state a cognizable federal claim. In the event the District Court finds Petitioner has presented cognizable federal claims, the Court RECOMMENDS that the petition be DENIED with prejudice.

1  This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United
2 States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule
3 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of
4 California.

5  Within thirty (30) days after being served with a copy, any party may file written objections
6 with the court and serve a copy on all parties.  Such a document should be captioned "Objections to
7 Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and
8 filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.
9 The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The
10 parties are advised that failure to file objections within the specified time may waive the right to
11 appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
12 IT IS SO ORDERED.

13 **Dated:   October 25, 2005**          **/s/ Lawrence J. O'Neill**
b9ed48                             UNITED STATES MAGISTRATE JUDGE