# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. BARKER, ) | CV F 03 6100 AWI LJO HC |
| ) | |
| Petitioner, ) | FINDINGS AND RECOMMENDATION |
| ) | REGARDING PETITION FOR WRIT OF |
| v. ) | HABEAS CORPUS |
| ) | |
| GAIL LEWIS, Warden, ) | [Doc. #1] |
| ) | |
| Respondent. ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This action has been referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302. Due to the death of Magistrate Judge Hollis G. Best and the appointment of Magistrate Judge William M. Wunderlich, this matter was reassigned to the undersigned for all further proceedings.

### BACKGROUND[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Contra Costa, following his conviction by

---

[1] This information is derived from the petition for writ of habeas corpus, Respondent's answer to the petition, and Petitioner's traverse to Respondent's answer.

jury trial on June 27, 1975, of murder in the first degree in violation of Cal. Penal Code § 187 and involuntary manslaughter in violation of Cal. Penal Code § 192. See Exhibit A, Respondent's Answer to Petition (hereinafter "Answer").  Petitioner was sentenced to serve an indeterminate prison term of seven years to life. See Petition at 3.

On May 31, 2001, a parole suitability hearing was held by the California Board of Prison Terms ("BPT"). See Exhibit B, Answer. Petitioner refused to attend the hearing. He was, however, represented by an attorney at the hearing. At the conclusion of the hearing, the BPT denied parole and deferred rehearing for three years.

On July 28, 2003, Petitioner filed the instant petition for writ of habeas corpus in the United States District Court for the Northern District of California.  By order of the court dated August 5, 2003, the action was transferred to the Fresno Division of the Eastern District of California and received in this Court. The petition for writ of habeas corpus does not challenge the underlying conviction; rather, it challenges the May 31, 2001, decision of the California Board of Prison Terms to deny parole.

On January 22, 2004, Respondent filed an answer to the petition for writ of habeas corpus.

On March 16, 2004, Petitioner filed a traverse to Respondent's answer.

On July 27, 2005, Respondent, with leave of court, filed a supplemental answer to the petition.

On October 17, 2005, Petitioner filed a supplemental traverse.

**DISCUSSION**

I.  Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

1    Petitioner is in custody of the California Department of Corrections pursuant to a state court
2 judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C.
3 § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold
4 requirement of being in custody pursuant to a state court judgment. White v. Lambert, 370 F.3d
5 1002, 1006 (9th Cir.2004); Sass v. California Board of Prison Terms, 2005 WL 1406100, *2 (E.D.
6 Cal.2005); see 28 U.S.C. § 2254(a) (This Court may entertain a petition for writ of habeas corpus "in
7 behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is
8 in custody in violation of the Constitution or laws or treaties of the United States.").

9    The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death
10 Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63, 70
11 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the
12 adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable
13 application of, clearly established Federal law, as determined by the Supreme Court of the United
14 States" or "resulted in a decision that was based on an unreasonable determination of the facts in
15 light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,
16 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

17    As a threshold matter, this Court must "first decide what constitutes 'clearly established
18 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
19 *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court
20 must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time
21 of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly
22 established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by
23 the Supreme Court at the time the state court renders its decision." Id.

24    Finally, this Court must consider whether the state court's decision was "contrary to, or
25 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,
26 *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the
27 writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a
28 question of law or if the state court decides a case differently than [the] Court has on a set of

materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.  Review of Claim

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro, 825 F.2d at 1398-99; see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399;

2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability, Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

Here, assuming that Petitioner has a protected liberty interest in the parole board's determination of his minimum term and release date, Petitioner was afforded all of his due process protections.  He and his attorney were given advance written notice of his hearing. He had an opportunity to be heard at the challenged May 31, 2001, parole hearing; however, he chose not to attend the hearing. His attorney was present at the hearing.  Relevant factors were discussed and taken into account, such as the circumstances of the offense, Petitioner's past criminal history, past and present mental state, education and vocational training while incarcerated, drug addictions, physical disabilities, behavior while incarcerated, and post-release plans. See Exhibit B, Answer; 15 C.C.R. § 2281.  Upon conclusion of the hearing, it was the judgment of the panel that Petitioner would pose an unreasonable risk of danger to society if released from prison. In addition, the parole board notified Petitioner of the reasons for the denial of a parole release date. See Greenholtz, 442 U.S. at 16.  As previously stated, Petitioner was represented by an attorney at the hearing, and he offered mitigating factors for the Board's consideration. See Pedro, 825 F.2d at 1399; Jancsek, 833 F.2d at 1390; 15 C.C.R. § 2281.

Moreover, the decision was supported by "some evidence." The parole board panel first noted that the offense was carried out in a heinous, atrocious or cruel manner pursuant to 15 C.C.R. § 2281(c)(1). In support of this finding, the panel noted that two victims were killed, the offense was carried out in an unfeeling manner, the victims were reviled during the offense, and the offense was carried out in a manner without feeling for human suffering. 15 C.C.R. § 2281(c)(1)(A-D). These findings find ample support in the facts of the case, as set forth by the panel:

> [T]he inmate, at a Hell's Angels meeting, indoor party, instructed and caused the death of two individuals. One, who was given at least ten caps of LSD in his coffee, went into convulsions and died. The second, which was a friend of the first victim, which was directed by [Petitioner], who was obviously a shot-caller of this killing, was choked to death. Both individuals were then removed to a remote site and placed into a well, a deep well, where

>they had debris, including lime, placed on their bodies, and they were not discovered for a number of months after the killings.

See pp. 44-45, Exhibit B, Answer.

Next, the panel found that Petitioner had programmed in a limited manner while incarcerated, had failed to adequately upgrade himself vocationally, and had not sufficiently participated in beneficial self-help and therapy programming. 15 C.C.R. § 2281(d)(9). This conclusion is supported by the fact that Petitioner's last vocational training took place ten years before.

The panel next noted that Petitioner had a record of misconduct while incarcerated, including fourteen CDC-128 Rule Violation Reports, four of which occurred after the most recent parole hearing. 15 C.C.R. § 2281(c)(6). In addition, Petitioner had refused to cooperate with clinicians in attempting to complete a psychiatric or psychological report. 15 C.C.R. § 2281(c)(5)-(6). Last, the panel noted that Petitioner's post-release plans were lacking. 15 C.C.R. § 2281(d)(8).

In sum, Petitioner was given adequate due process. The Constitution does not require more. Greenholtz, 442 U.S. at 16. Consequently, Petitioner's claim that the parole board's decision was not supported by some evidence fails.

Petitioner also claims the panel failed to consider his positive programming while incarcerated. As discussed above, all relevant factors, positive and negative, were taken into consideration. Nevertheless, the negative factors weighing against parole were substantial, and the parole board was presented with hardly any evidence in support of parole suitability. As noted by Respondent, Petitioner refused to even attend the hearing to present his positive factors. He also refused to cooperate with psychologists and counselors in preparation of psychological reports which could have assisted him. No post-release plans were submitted as Petitioner had failed to provide any information. Finally, Petitioner had not programmed successfully while in prison. The last time Petitioner upgraded vocationally was ten years prior to the hearing. Thus, Petitioner's claim that the parole board did not consider all positive factors must be rejected.

Petitioner claims he has a right to a prompt determination of his primary term and claims the parole board should have "fixed" a parole date at his parole suitability hearing. This claim is without merit because Petitioner was not determinately sentenced. He was sentenced to an indeterminate

term of seven years to life. See Exhibit A, Answer. In California, a life prisoner's primary term is not "fixed" until such time that he is found suitable for parole. As noted by Respondent, the maximum term for a life sentence is the natural life of the prisoner, and there is no requirement in California that a term ever be fixed at less than the maximum. In re Lynch, 8 Cal.3d 410, 415-16 (1972). Thus, Petitioner's claim that his parole date should be fixed must be rejected.

For the same reasons, Petitioner is not entitled to a finding of suitability merely because a co-defendant has been found suitable. As discussed above, a suitability determination is highly individualized and takes into account the relevant factors in Petitioner's own case. Under California law, the factors supporting a co-defendant's parole determination has no application in a defendant's parole hearing, and the Constitution does not require such.

**RECOMMENDATION**

Accordingly, the Court hereby RECOMMENDS that the petition be DENIED with prejudice.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    August 22, 2006**                          /s/ Lawrence J. O'Neill
b9ed48                                                         UNITED STATES MAGISTRATE JUDGE